UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ENIGMA SOFTWARE GROUP USA, LLC,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>MALWAREBYTES INC.,<br><br>　　　　　Defendant. | Case No. 1:16-cv-07885 (PAE)<br><br>**DECLARATION OF MARK HARRIS IN SUPPORT OF MALWAREBYTES INC.'S MOTION TO DISMISS AND MOTION TO TRANSFER** |

　　　　I, Mark Harris, hereby declare as follows:

　　　　1.　　I am the Chief Financial Officer at Malwarebytes Inc. ("Malwarebytes"), where I have worked since 2014. I have personal knowledge of the facts stated in this declaration or base them on business records that I have reviewed. If called to testify as a witness in this matter, I could and would testify competently to the facts set forth herein.

　　　　2.　　Since 2008, Malwarebytes has been a leading innovator in the security software industry. Malwarebytes develops and offers anti-malware and internet security software that protects consumers' computers from malware, including viruses, trojans and adware. Malwarebytes offers separate anti-malware solutions for consumers and business enterprise. Malwarebytes' popular Anti-Malware software detects malware, removes the malicious code, and repairs the damaged files. Consumers can use the Malwarebytes Anti-Malware software for free. If they want additional features, such as blocking of malicious websites, real-time malware detection, faster scanning, and scheduled scans and updates, then consumers can upgrade to a premium version.

　　　　3.　　Since 2013, Malwarebytes' software has also detected Potentially Unwanted Programs ("PUPs"), which often are programs added to a user's computer without the user's

knowledge or approval.  Since that time, Malwarebytes has periodically updated its criteria for detecting PUPs to respond to increasingly aggressive tactics employed by PUP developers to install their programs on users' computers.

4. Malwarebytes is a Delaware corporation that maintains its headquarters and principal place of business in Santa Clara, California.  **Exhibit A** is a true and correct copy of Malwarebytes' Certificate of Incorporation filed with the Delaware Secretary of State.  Most of Malwarebytes' employees, including all of its employees who have worked on detections of PUPs in 2016, work out of its Santa Clara office or remotely. Malwarebytes maintains its primary business records and data in California.  The only other offices that Malwarebytes maintains are in Cork, Ireland, Clearwater, Florida, and Tallinn, Estonia.

5. Malwarebytes is not a citizen of New York, and it has no office there.  It does not own or operate any data center in New York to support its business.  Although it targets enterprise customers in New York, Malwarebytes does not specifically target individual consumers in New York.

6. Malwarebytes' website is not specific to any state or geography; it is generally accessible to any Internet user who can navigate to it. Regardless of what state a user may happen to be in, users can choose to download Malwarebytes' software directly to their computers from its website, located at www.malwarebytes.com.  Users can download and install the free software without ever entering information disclosing what state they are in.

7. Malwarebytes' Terms of Service and End User License Agreement (EULA) for the software are governed by California law. In addition, the Terms of Service and EULA require that all court actions arising from them shall be in California. **Exhibit B** is a true and correct copy of Malwarebytes' Terms of Service and EULA.

8.      Malwarebytes' also offers enterprise anti-malware and threat-detection software. This software is available from Malwarebytes' website.  In addition, Malwarebytes employs sales representatives to support its enterprise customers.

9.      Malwarebytes' enterprise users purchase license subscriptions to Malwarebytes' products.  I am aware of no Malwarebytes enterprise customer who also uses products from Enigma Software Group USA, LLC ("Enigma"), and based on my review of Enigma's website for its SpyHunter program, it does not appear that Enigma offers an enterprise version.

10.     Five of Malwarebytes more than 300 employees work remotely from their homes in New York.  Four of those employees work in enterprise sales roles.  None of those employees has had any involvement in developing Malwarebytes' criteria for detection of PUPs

11.     On the Malwarebytes web pages for its consumer and business products, there is no mention of New York. **Exhibit C** is a true and correct copy of Malwarebytes' web pages at https://www.malwarebytes.com/antimalware/ and https://www.malwarebytes.com/business/.

12.     Having reviewed Enigma's Complaint in this matter, I understand that Enigma alleges that Malwarebytes revised its PUP criteria to falsely identify Enigma's products as PUPs, in order to unfairly compete with Enigma.  Malwarebytes considers Enigma not to be a competitor or a reputable supplier of computer programs, but rather to be a supplier of computer programs that many consumers decide are undesirable and unwanted, at best.

13.     Malwarebytes employs a team of researchers and engineers, based primarily out of Malwarebytes' headquarters in Santa Clara, to develop and execute criteria for identifying PUPs. The team constantly re-evaluates the criteria to account for new threats and rapidly evolving software.  Malwarebytes publishes a list of criteria on its website.  **Exhibit D** is a true and correct copy of the criteria information available on Malwarebytes' website, at

https://www.malwarebytes.com/pup/. The team uses these criteria to develop code to include in Malwarebytes' software to detect PUPs.

14. When Malwarebytes' software identifies a PUP, it lists the program in the user's Malwarebytes scan results under the category "Potentially Unwanted Program." To delete the program, the user must select the program from the list and click "Remove Selected." Alternatively, a user can choose to keep the program or quarantine it. Users can customize their software settings to change how the software treats PUPs by default.

15. In October 2016, Malwarebytes' team of researchers and engineers refined the PUPs criteria. The U.S. employees involved in that process were based in Malwarebytes' Santa Clara office.

16. As **Exhibit D** shows, Malwarebytes considers whether a program has received "predominantly negative feedback or ratings from the user community" when deciding whether to classify it as a PUP. The Malwarebytes employees who review—and could testify about— that feedback and ratings are based in Santa Clara, California. I am aware that members of that team received complaints from Malwarebytes' users regarding their inability to remove Enigma's unwanted programs from their computers. Malwarebytes users complained that Enigma's products aggressively pushed alerts about impending threats and required the user to purchase Enigma's products to eliminate these risks. Users who did not wish to use Enigma's programs reported difficulty uninstalling the programs from their computers. Based on its criteria and the user feedback, Malwarebytes determined that Enigma relies on misleading sales and advertising strategies to promote and distribute its products.

17. Given that the Malwarebytes' employees involved in the PUPs criteria are concentrated in California, it would be substantially more convenient for them to attend trial and participate in discovery in California instead of New York.

18. I am aware of Enigma's allegation that agents or employees of the company operating the website BleepingComputer.com ("Bleeping") posted a critical review of the SpyHunter product on Bleeping's website to facilitate sales of Malwarebytes' software. Bleeping is not a member of Malwarebytes' channel partner program, which it calls its "Partnerbytes program." Instead, visitors to Bleeping's website can click a "Buy Malwarebytes Anti-Malware" link on Bleeping's website that will send potential purchasers to Malwarebytes website to complete a purchase of Malwarebytes' Anti-Malware Premium program. Bleeping receives a commission for these sales through Malwarebytes' third-party provider, Cleverbridge. Malwarebytes receives an immaterial amount of revenue through these purchases, totaling less than $40,000 in 2015. Visitors to Bleeping's website can also download the free version of Malwarebytes Anti-Malware directly from Bleeping's website.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 16th day of November, 2016, in Cork Ireland,

_____
Mark Harris