UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

ENIGMA SOFTWARE GROUP USA, LLC,

                        Plaintiff,                  16 Civ. 7885 (PAE)

              -v-                            OPINION & ORDER

MALWAREBYTES INC.,

                        Defendant.

------------------------------------------------------------X

PAUL A. ENGELMAYER, District Judge:

Enigma Software Group USA, LLC ("Enigma"), a developer of computer security products, brings this action against Malwarebytes, Inc. ("Malwarebytes"), which Enigma claims is its direct competitor in the anti-malware and internet security market. Enigma markets SpyHunter, its leading anti-malware program; Malwarebytes markets Malwarebytes Anti-Malware ("MBAM"), which detects and removes malware on consumers' personal computers. Enigma alleges that, in October 2016, Malwarebytes revised MBAM's threat detection criteria to identify its competitor Enigma's products—including SpyHunter—as threats to consumers. Malwarebytes did so, Enigma claims, to damage Enigma's reputation and to disrupt or disable Enigma's products on consumers' computers, so as to give Malwarebytes an unfair advantage. Enigma brings claims against Malwarebytes for false advertising in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B), and under New York law for tortious interference with contractual relations, tortious interference with business relations, and for violating New York General Business Law § 349.

1

Malwarebytes now moves to dismiss Enigma's First Amended Complaint ("FAC") under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6) or, in the alternative, to transfer this case to the Northern District of California pursuant to 28 U.S.C. § 1404. For the reasons that follow, the Court grants the motion to transfer and declines to reach the motion to dismiss.

## I. Background

### A. Factual Background[1]

#### 1. The Parties

The FAC alleges that Enigma is a Florida limited liability company that develops and markets computer security software. FAC ¶¶ 2, 35. Its computer security products "detect[] and remove[] malicious software (*i.e.*, malware), which includes, *inter alia*, viruses, spyware and adware; enhance[] internet privacy; and eliminate[] other security threats." *Id.* ¶ 2. Enigma's flagship anti-malware product is called "SpyHunter." *Id.* ¶ 4.

---

[1] The Court's account of Enigma's factual allegations is drawn from the FAC, Dkt. 33 ("FAC"). On a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court is required to assume the truth of the allegations in the complaint and to draw all inferences in the plaintiff's favor. *Galiano v. Fid. Nat'l Title Ins. Co.*, 684 F.3d 309, 311 (2d Cir. 2012). Here, defendants also move on other grounds. On a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), the Court may look beyond the four corners of the complaint and consider all pleadings and accompanying affidavits and declarations, while still "resolving all doubts in [plaintiff's] favor." *See DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001) (citation omitted); *Advanced Portfolio Techs., Inc. v. Advanced Portfolio Techs. Ltd.*, No. 94 Civ. 5620 (JFK), 1997 WL 401810, at *2 (S.D.N.Y. July 16, 1997). On a motion to transfer venue, the Court may consider factual submissions, including declarations, by defendants, who bear the burden on such a motion. *See, e.g., Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 218 (2d Cir. 1978), *overruled on other grounds by Pirone v. MacMillan, Inc.*, 894 F.2d 579 (2d Cir. 1990); *MasterCard Int'l, Inc. v. Lexcel Solutions, Inc.*, No. 3 Civ. 7157 (WHP), 2004 WL 1368299, at *6 (S.D.N.Y. June 16, 2004) (relying on defendant's declarations in granting motion to transfer, while denying motion to dismiss for lack of personal jurisdiction). Accordingly, solely for the purpose of deciding the motion to transfer, the Court considers statements in the Declaration of Mark Harris, Dkt. 39, to the limited extent that they bear on the transfer motion. The Court addresses below Enigma's separate motion, Dkt. 47, to strike portions of that declaration.

Malwarebytes is a Delaware corporation, headquartered in Santa Clara, California, that is a competitor of Enigma's in the computer security products market. *Id.* ¶¶ 4, 36. Its flagship anti-malware product is "Malwarebytes Anti-Malware" or "MBAM." *Id.* ¶ 4. MBAM detects "Potentially Unwanted Programs" or "PUPs" on consumers' computers. *Id.* ¶ 5. MBAM automatically quarantines these PUPs and flags them for consumers as "threats." *Id.* MBAM presents consumers with a list of its "Threat Scan Results," with each "threat" preselected for removal from the consumer's computer. *Id.*

### 2. Enigma's Earlier Lawsuit Against Bleeping Computer LLC

In January 2016, Enigma filed, in this Court, a lawsuit against Bleeping Computer LLC ("Bleeping"). *See Enigma Software Group USA, LLC v. Bleeping Computer LLC et al.,* No. 16 Civ. 57, Dkt. 1. Enigma alleged that Bleeping, a New York company, was affiliated with Malwarebytes and would promote Malwarebytes' MBAM product and earn a commission from Malwarebytes when consumers, through a link on Bleeping's website, bought MBAM. FAC ¶ 22. Enigma accused Bleeping of falsely disparaging Enigma's products, while instructing consumers to uninstall or not install Enigma's products and encouraging consumers to purchase MBAM. *Id.* ¶ 23. On July 8, 2016, the Court granted in part and denied in part Bleeping's motion to dismiss. 194 F. Supp. 3d 263 (S.D.N.Y. 2016).

During discovery in its lawsuit against Bleeping, Enigma served a subpoena on Malwarebytes. Enigma sought documents regarding the extent of Malwarebytes' involvement in Bleeping's alleged scheme. FAC ¶ 24. The deadline to respond to the subpoena was in October 2016. *Id.* ¶¶ 7, 25. In 2017, while discovery was ongoing, Enigma and Bleeping settled, and the Court dismissed, Enigma's lawsuit. *See* 16 Civ. 57, Dkts. 70–72.

### 3. 2016: Malwarebytes' Products Begin Identifying Enigma's as Threats

Between 2008 and October 4, 2016, Malwarebytes products had never identified Enigma products as PUPs, or as any other form of malware, and had never quarantined or interfered with the installation of Enigma products. *Id.* ¶ 6.

On October 5, 2016, one week before the deadline to respond to Enigma's subpoena in the suit against Bleeping, Malwarebytes revised the criteria its MBAM software used to identify PUPs. *Id.* ¶¶ 7, 25. Before then, Malwarebytes had last changed its PUP criteria in 2013. *Id.* The new criteria identified SpyHunter, and another Enigma product, "RegHunter," as PUPs. *Id.* ¶ 9. As a result, if a consumer had SpyHunter or RegHunter on his or her computer and then downloaded or scanned that computer with MBAM, MBAM would automatically quarantine the Enigma products and identify them to the consumer as PUPs. *Id.* ¶ 10. Once the products were quarantined, the consumer would not be able to launch or use SpyHunter or RegHunter, even if the consumer attempted to "restore" those programs, unless the consumer undertook a series of "additional steps that may not be readily apparent to, or understood by, a novice user." *Id.* Alternatively, if a consumer had MBAM on his or her computer and then attempted to download or install SpyHunter or RegHunter, MBAM would block the installation of the Enigma products, again regardless whether the consumer tried to "restore" the products from quarantine. *Id.* ¶ 11.

On October 19, 2016, Malwarebytes acquired an anti-adware product called "AdwCleaner," which ostensibly "identif[ies] and remove[s] PUPs, adware, toolbars, and other unwanted software for its users." *Id.* ¶ 12. At the time Malwarebytes acquired it, AdwCleaner did not identify SpyHunter or RegHunter as PUPs. *Id.* ¶ 13. On or about October 27, 2016, AdwCleaner began identifying SpyHunter and RegHunter as PUPs. *Id.* ¶ 14. AdwCleaner then quarantined and blocked these products just as MBAM did. *Id.*

The FAC alleges that Malwarebytes falsely identified Enigma's products as threats. In truth, it alleges, these products are "legitimate and pose no security threat to users' consumers." *Id.* It alleges that Malwarebytes purposely revised its criteria to target Enigma's products for the purpose of "harming [Enigma] by, *inter alia*, interfering with [Enigma's] current and prospective customer base, injuring [Enigma's] business, and retaliating against [Enigma] for its lawsuit against Bleeping." *Id.* ¶ 8.

The FAC alleges that, as a result of Malwarebytes' "bad faith campaign" against Enigma, *id.* ¶ 34, Enigma has suffered "immediate harm . . . in the form of lost sales and revenue" and "irreparable harm to [Enigma's] business reputation," *id.* ¶ 20.

## B. Procedural History

On October 7, 2016, Enigma filed the complaint. Dkt. 1. The action was initially referred to this Court as possibly related to Enigma's lawsuit against Bleeping. In a Statement of Relatedness filed with the Court, Enigma explained the relationship between these lawsuits. It noted that, as alleged, "[b]oth defendants are acting in concert to harm the plaintiff," "[b]oth cases involve harm to consumers as a result of the defendants' false advertising, defamation, and unfair competition," and "[t]he plaintiff seeks similar injunctive relief against" both Bleeping and Malwarebytes. Dkt. 5. Enigma also explained that Malwarebytes was already a subpoenaed witness in the case against Bleeping and that Bleeping would be a witness in this case against Malwarebytes. *Id.* On October 13, 2016, this Court accepted the action as related to the pending lawsuit against Bleeping.

On November 16, 2016, Malwarebytes filed a motion to dismiss the complaint or transfer the case, Dkt. 17, and a request for judicial notice, Dkt. 20. On November 17, 2016, the Court

issued an order stating that it would resolve the request for judicial notice, if opposed, in the course of resolving the motion to dismiss. Dkt. 29.

On December 7, 2016, Enigma filed the FAC. Dkt. 34. On December 28, 2016, Malwarebytes filed a motion to dismiss the FAC or transfer the case, Dkt. 37, and, in support, a memorandum of law, Dkt. 38 ("Def. Br."), and the declaration of Mark Harris, Dkt. 39 ("Harris Decl."). Also on December 28, 2016, Malwarebytes filed a request for judicial notice in support of its motion to dismiss or transfer, Dkt. 40, and the supporting declarations of Nathan Scott, Dkt. 41 ("Scott Decl."), and Tyler Newby, Dkt. 42 ("Newby Decl.").

On January 11, 2017, Enigma filed one memorandum of law in opposition to the motions to dismiss or transfer, Dkt. 49 ("Pl. Br."), and another in opposition to the request for judicial notice, Dkt. 45. That same day, Enigma filed a motion to strike, Dkt. 46, and a motion for leave to file supplemental allegations to the FAC, Dkt. 50.

On January 18, 2017, Malwarebytes filed a reply memorandum of law. Dkt. 53 ("Def. Rep. Br.").

On January 25, 2017, Malwarebytes filed one memorandum of law in opposition to the motion to strike, Dkt. 56, and another in opposition to the motion for leave to file supplemental allegations to the FAC, Dkt. 57.

On February 3, 2017, the Court held argument on the motion to dismiss or transfer. Just one day prior, on February 2, 2017, the parties to the lawsuit against Bleeping had notified the Court that they had entered into a settlement. No. 15 Civ. 57, Dkt. 70.

## II. Standards Applicable to Malwarebytes' Motions

### A. Motions to Transfer Under § 1404

28 U.S.C. § 1404 provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Section 1404 "gives district courts wide latitude to decide whether to transfer venue." *Everlast World's Boxing Headquarters Corp. v. Ringside, Inc.*, 928 F. Supp. 2d 735, 743 (S.D.N.Y. 2013) (citing *In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 117 (2d Cir. 1992); *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)); *Guardian Life Ins. Co. of Am. v. Hernandez*, No. 11 Civ. 2114 (SAS), 2011 WL 3678134, at *2 (S.D.N.Y. Aug. 22, 2011)).

Courts undertake a two-step inquiry to decide motions to transfer venue under § 1404(a). *Everlast*, 928 F. Supp. 2d at 743. The Court first must determine "'whether the action could have been brought in the transferee district.'" *Id.* (quoting *Robertson v. Cartinhour*, No. 10 Civ. 8442 (LTS) (HBP), 2011 WL 5175597, at *3 (S.D.N.Y. Oct. 28, 2011)). If so, the Court then must determine "'whether transfer would be an appropriate exercise of the Court's discretion.'" *Everlast*, 928 F. Supp. 2d at 743 (quoting *Robertson*, 2011 WL 5175597, at *3).

To assess whether transfer is an appropriate exercise of the Court's discretion, the Court must "balance various factors: (1) the convenience of the witnesses; (2) the convenience of the parties; (3) the location of relevant documents and the relative ease of access to sources of proof; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded the plaintiff's choice of forum; and (9) trial efficiency and the interests of justice." *Everlast*, 928 F. Supp. 2d at 743 (citing *Robertson*, 2011 WL 5175597, at *4); *Kreinberg v. Dow Chem. Co.*, 496 F. Supp. 2d 329, 330 (S.D.N.Y. 2007); *Reliance Ins. Co. v. Six Star, Inc.*, 155 F. Supp. 2d 49, 56–57 (S.D.N.Y. 2001)).

### B. Motions to Dismiss Under Rule 12(b)(2)

On a motion to dismiss pursuant to Rule 12(b)(2) for lack of personal jurisdiction, "the plaintiff bears the burden of establishing that the court has jurisdiction over the defendant." *DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001) (citation omitted); *accord In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013). "[T]he showing a plaintiff must make to defeat a defendant's claim that the court lacks personal jurisdiction over it 'varies depending on the procedural posture of the litigation.'" *Dorchester*, 722 F.3d at 84 (quoting *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990)). Relevant here, before discovery, "a plaintiff challenged by a jurisdiction testing motion may defeat the motion by pleading in good faith, legally sufficient allegations of jurisdiction. At that preliminary stage, the plaintiff's prima facie showing may be established solely by allegations." *Id.* (quoting *Ball*, 902 F.2d at 197); *accord In re Terrorist Attacks*, 714 F.3d at 673 ("In order to survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that jurisdiction exists." (citation omitted)).

A showing of personal jurisdiction "may be made through the plaintiff's 'own affidavits and supporting materials, containing an averment of facts that, if credited, would suffice to establish jurisdiction over the defendant.'" *S. New Eng. Tel. Co. v. Global NAPs Inc.*, 624 F.3d 123, 138 (2d Cir. 2010) (quoting *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001)). The Court "construe[s] the pleadings and affidavits in the light most favorable to plaintiffs, resolving all doubts in their favor." *Dorchester*, 722 F.3d at 85 (quoting *S. New Eng. Tel.*, 624 F.3d at 138). Nevertheless, the Court "will not draw argumentative inferences in the plaintiff's favor" and need not "accept as true a legal conclusion couched as a factual allegation." *In re Terrorist Attacks*, 714 F.3d at 673 (citations omitted).

### C. Motions to Dismiss Under Rule 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In considering a motion to dismiss, a district court must "accept[] all factual claims in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor." *Lotes Co. v. Hon Hai Precision Indus. Co.*, 753 F.3d 395, 403 (2d Cir. 2014) (quoting *Famous Horse Inc. v. 5th Ave. Photo Inc.*, 624 F.3d 106, 108 (2d Cir. 2010) (internal quotation marks omitted)). However, this tenet is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "[R]ather, the complaint's [f]actual allegations must be enough to raise a right to relief above the speculative level, *i.e.*, enough to make the claim plausible." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Twombly*, 550 U.S. at 555, 570) (internal quotation marks omitted) (emphasis in *Arista Records*). A complaint is properly dismissed where, as a matter of law, "the allegations in [the] complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558.

### III. Discussion

As noted, Malwarebytes seeks dismissal of the FAC under Rule 12(b)(2) for lack of personal jurisdiction and under Rule 12(b)(6) for failure to state a claim. In the alternative,

Malwarebytes argues, the case should be transferred to the Northern District of California. For the reasons below, the Court grants the motion to transfer and declines to reach the motions to dismiss.

A.    **Threshold Question: Order of Analysis**

"Although it is common to resolve challenges to personal jurisdiction before addressing motions to transfer venue . . . it is not required that courts do so." *Everlast*, 928 F. Supp. 2d at 741 (citations omitted). A court "may instead address venue applications at the threshold, 'when there is a sound prudential justification for doing so,' because 'neither personal jurisdiction nor venue is fundamentally preliminary in the sense that subject-matter jurisdiction is.'" *Id.* (quoting *Leroy v. Great W. United Corp.*, 443 U.S. 173, 180 (1979); *Cavit Cantina Viticoltori Consorzio Cantine Sociali Del Trentino Societa' Cooperativa v. Browman Family Vineyards, Inc. ("Cavit Cantina")*, 656 F. Supp. 2d 421, 424 (S.D.N.Y. 2009); *see also Everlast*, 928 F. Supp. 2d at 741 ("To address a venue challenge does not require a preliminary finding that 'the transferring court has personal jurisdiction over the defendants'" (quoting *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 465 (1962))).

"Where personal jurisdiction would likely exist in the transferee district over a defendant who contests personal jurisdiction in the Southern District of New York, it is 'prudentially appropriate to address venue first since a decision to transfer would render personal jurisdiction analysis with respect to [the Southern District of New York] irrelevant.'" *Everlast*, 928 F. Supp. 2d at 742 (quoting *Basile v. Walt Disney Co.*, 717 F. Supp. 2d 381, 385–86 (S.D.N.Y. 2010)). The Court "has power to transfer the case even if there is no personal jurisdiction over the defendants, and whether or not venue is proper in [the] district, if a transfer would be in the

interest of justice." *Volk Corp. v. Art-Pak Clip Art Serv.*, 432 F. Supp. 1179, 1181 (S.D.N.Y. 1977)).

Here, Malwarebytes contests personal jurisdiction in this District, but it is apparent that personal jurisdiction would exist over Malwarebytes in the Northern District of California, where Malwarebytes is headquartered and has its principal place of business. FAC ¶ 36, Def. Br. at 16; *see Daimler AG v. Bauman*, 134 S. Ct. 746, 760 (2014) ("With respect to a corporation, the place of incorporation and principal place of business are paradigm bases for general jurisdiction." (internal quotation marks and alterations omitted)). It is, therefore, prudent for the Court to address the motion to transfer first.

### B. Venue in the Transferee District

A court assessing a transfer motion must first determine whether venue would be proper in the transferee district. Venue is proper in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." 28 U.S.C. § 1391(b)(1). Because Malwarebytes resides in the Northern District of California, venue is proper there. *See* Def. Br. at 16; § 1391(c).

### C. Multi-Factor Balancing Test

The Court next applies the multi-factor balancing test. The Court finds that, viewed together, the relevant factors favor transfer of this action to the Northern District of California, and exercises its discretion to order such transfer. Three of the nine factors, including factors commonly given significant weight, favor transfer to California, whereas only one factor favors New York and the remaining factors are neutral.

### 1. Factors Favoring Transfer

#### a. Convenience of Witnesses

The convenience of witnesses "is an important consideration, and has often been described as the single most important § 1404(a) factor." *Id.*; *see Filmline (Cross-Country) Prods., Inc. v. United Artists Corp.*, 865 F.2d 513, 520 (2d Cir. 1989); *D'Anton Jos, S.L. v. Doll Factory, Inc.*, 937 F. Supp. 320, 323 (S.D.N.Y. 1996) (citing *Pilates, Inc. v. Pilates Inst., Inc.*, 891 F. Supp. 175, 183 (S.D.N.Y. 1995)); *see also* 15 Charles Alan Wright, et al., Federal Practice and Procedure § 3851 (3d ed. 2007) (convenience of witnesses "[o]ften cited as the most important factor in passing on a motion to transfer under § 1404(a)" and "one of the [factors] most frequently mentioned by courts").

This factor strongly favors transfer. In all likelihood, the most central witnesses in this case will be Malwarebytes employees called to testify regarding the process by which that California company revised its PUP criteria so as to disfavor Enigma products. Malwarebytes does not dispute that its PUP criteria were revised, or that the revision led to the identification of Enigma products as PUPs. *See* Def. Br. at 16. Accordingly, a central factual dispute at trial will be Malwarebytes' motivations for, and methodology in, revising those criteria. None of the Malwarebytes employees involved in developing the PUP criteria are located in New York; most are located in California. *Id.* Malwarebytes represents that it also expects to offer testimony from sales and marketing employees located in California. *Id.* at 17.

To be sure, as Enigma notes, Malwarebytes does not identify these witnesses by name. Specification of these witnesses by name would have further strengthened Malwarebytes' case for transfer. Nevertheless, Malwarebytes' descriptions of the roles played by witnesses—which it forecasts will include "Malwarebytes' team of researchers and engineers responsible for revising its PUPs criteria," Def. Rep. Br. at 5—are sufficiently clear. The Court is convinced

12

that, even if the particular witnesses have not yet been named, Malwarebytes employees within this category are likely to be key witnesses at trial.

In contrast, there are no essential witnesses who live in this District. Neither company claims to have relevant operations in New York. Conceivably, either party might seek to offer the testimony of consumers. But the FAC does not allege that impacted consumers were centered in New York; rather, over 93% of such consumers reside elsewhere. FAC ¶ 123. And although Enigma does identify several of its own potential witnesses who are located *nearer* to New York than to California, *see* Pl. Br. at 19 (describing witnesses who "reside less than 150 miles from [the Southern District of New York]" and who "can more easily fly into New York City"), it has not identified a single witness *actually located* in New York. This is not enough to shift the balance as to witness convenience from strongly favoring Northern California. *See Everlast*, 928 F. Supp. 2d at 744 ("[E]ven assuming that several New York-based Everlast witnesses would testify, Kansas is still a much more convenient venue for the majority of the witnesses—and the vastly greater relative quantity of Kansas-based witnesses alone favors transfer.").

Accordingly, the Court finds that the convenience of witnesses, the "single most important § 1404(a) factor," *id.* at 743, favors transfer to the Northern District of California.

### b. Locus of Operative Facts

The locus of operative facts is another "primary factor in determining a § 1404(a) motion to transfer." *Smart v. Goord*, 21 F. Supp. 2d 309, 316 (S.D.N.Y. 1998) (citation omitted). This factor "substantially favors transfer from this district when a party 'has not shown that any of the operative facts arose in the Southern District of New York.'" *SBAV LP v. Porter Bancorp, Inc.*, No. 13 Civ. 372 (PAE), 2013 WL 3467030, at *4 (S.D.N.Y. July 10, 2013) (quoting *Dr. Boy GmbH v. Nationwide Ins.*, No. 96 Civ. 3217 (AGS), 1996 WL 350699, at *2 (S.D.N.Y. June 25,

1996)). "[W]here there is no material connection between this district and the operative facts[,] the interests of justice require the transfer of the action." *Cohn v. Metro. Life Ins., Co.*, No. 07 Civ. 0928 (HB), 2007 WL 1573874, at *3 (S.D.N.Y. May 31, 2007) (citation omitted)). "To determine the locus of operative facts, a court must look to the site of the events from which the claim arises." *AVEMCO Ins. Co. v. GSV Holding Corp.*, No. 96 Civ. 8323 (LAP), 1997 WL 566149, at *6 (S.D.N.Y. Sept. 11, 1997) (citation omitted).

As to this factor, the Court focuses on "the degree of relationship between the forum and the cause of action." *CYI, Inc. v. Ja-Ru, Inc.*, 913 F. Supp. 2d 16, 21 (S.D.N.Y. 2012). The key facts giving rise to Enigma's claims occurred in California. The crux of Enigma's allegations is that Malwarebytes revised its PUP criteria in bad faith to interfere with and disparage Enigma's software. And California is where the PUP criteria was developed and added to Malwarebytes' software. Def. Br. at 7.

To be sure, the FAC does allege that New York consumers were among those who bought Malwarebytes' software and experienced interference with SpyHunter or RegHunter on their computers. FAC ¶ 123. But, as alleged, there is nothing unique to these (as opposed to non-New York) consumers. And, as noted, less than 7% of affected consumers reside in this District. *Id.* The decision in *CYI, Inc. v. Ja-Ru, Inc.*, is persuasive in showing that limited weight in the transfer analysis ought be assigned to Malwarebytes' New York sales. The plaintiff in *CYI, Inc.* brought a number of federal and state-law claims—including claims substantially akin to those brought here—in connection with defendants' marketing of certain toys that were allegedly similar to the toys marketed by the plaintiff. 913 F. Supp. 2d at 18. In assessing the locus of operative facts, the *CYI, Inc.* court noted that, "in cases where sales have occurred in multiple districts, courts have reached disparate results as to where the locus of

14

operative facts lies." *Id.* at 20. The court rejected as "not persuasive" the reasoning of "cases holding that the initially chosen forum is the locus of operative facts if there have been sales in that district, notwithstanding sales outside the district." *Id.* The court explained that, "if there are roughly equivalent sales of an allegedly infringing product in multiple districts, each such district has a roughly equivalent claim to being the locus of operative facts," and to treat this factor as favoring the plaintiff's chosen forum, "would conflate two of the factors the Court is to consider: the Court's assessment of the locus of operative facts would largely be subsumed by the Plaintiff's choice of forum." *Id.* This reasoning is persuasive. The Court declines to find that the location of consumers favors New York where only a small fraction of consumers of the product at issue bought the product issue in, or are located in, New York.

The "center of gravity" of this case, *see Am. Steamship Owners Mut. Prot. & Indem. Ass'n, Inc. v. Lafarge N. Am., Inc.*, 474 F. Supp. 2d 474, 485 (S.D.N.Y. 2007), *aff'd sub nom. N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102 (2d Cir. 2010), instead is clearly the Northern District of California. *Cf. Orb Factory, Ltd. v. Design Sci. Toys, Ltd.*, 6 F. Supp. 2d 203, 209 (S.D.N.Y. 1998) (locus of operative facts weighed against transfer where "a substantial portion of the wrongful acts . . . occurred in the Southern District, namely at a Toy Fair in New York City" and "conduct and activities in the Southern District are key elements of [plaintiff's] case"). Accordingly, the Court finds that this significant factor, too, favors transfer.

### c. Convenience of Parties

The convenience of the parties also favors transfer. "A defendant moving for transfer must show both that the original forum is inconvenient for it and that the plaintiff would not be substantially inconvenienced by a transfer." *SBAV LP*, 2013 WL 3467030, at *8. Here, neither party is located in this District of New York—Enigma is based in Florida, *see* FAC ¶ 35, and Malwarebytes is based in the Northern District of California. Transfer to that District would

15

therefore promote the convenience of the defendant without uprooting plaintiff. *See* Def. Br. at 18. Whatever convenience Enigma earlier derived from trying this case in New York based on its contemporaneous lawsuit in this District against New York-based Bleeping no longer exists, given Enigma's settlement with Bleeping.

### 2. Factor Disfavoring Transfer

The sole factor that disfavors transfer is Enigma's choice of this forum. Although "[a] plaintiff's choice of forum is accorded considerable weight in the § 1404(a) balancing test," *SBAV LP*, 2013 WL 3467030, at *11, "that choice merits less deference" where, as here, "'the connection between the case and the chosen forum is minimal,'" *Everlast*, 928 F. Supp. 2d at 748 (quoting *Chiste v. Hotels.com L.P.*, 756 F. Supp. 2d 382, 401 (S.D.N.Y.2010)). Furthermore, the Court infers that a factor influencing Enigma's choice to file here in October 2016 was that its related lawsuit against Bleeping was then pending in New York. As noted, that consideration no longer applies. Accordingly, Enigma's choice of forum does not alone "shift, or come close to shifting, the balance of factors so as to favor this District." *SBAV LP*, 2013 WL 3467030, at *11; *see Everlast*, 928 F. Supp. 2d at 748 (granting motion to transfer when plaintiff's choice of forum "is offset, and then some, by the other factors addressed above").

### 3. Neutral Factors

The remaining factors are neutral and do not substantially affect the transfer analysis.

The location of relevant documents and the relative ease of access to sources of proof does not materially favor or disfavor transfer. Malwarebytes stresses the fact that it maintains its documents and date at its California headquarters and stores its electronic business records on servers located in California. However, "[g]iven electronic discovery, and absent any concrete illustration of inconvenience to either side arising out of access to documents or other non-

testimonial proof, this factor does not materially favor either venue." *SBAV LP*, 2013 WL 3467030, at *11.

The availability of process to compel the attendance of unwilling witnesses also does not materially favor or disfavor transfer, as "[n]either party has persuasively identified particular witnesses likely to present attendance challenges." *Id.*

The relative means of the parties is similarly neutral. Neither party has made a showing as to this factor other than asserting generalized claims of financial hardship were the case to be tried elsewhere than in their preferred forum.

The forum's familiarity with the governing law—"one of the least important factors in determining a motion to transfer," *ACE Am. Ins. Co. v. Bank of the Ozarks*, No. 11 Civ. 3146 (PGG), 2012 WL 3240239, at *13 (S.D.N.Y. Aug. 3, 2012)—is also a neutral factor. Although Enigma brings claims under New York law, it has not identified any "nuanced issues of New York state law that this Court is materially more qualified to apply than a [California] court would be." *Everlast*, 928 F. Supp. 2d at 747.

The factor of trial efficiency and the interests of justice is also neutral, particular given the intervening settlement of Enigma's lawsuit against Bleeping. *See* Dkt. 65 at 2. Before the settlement, there would have been efficiencies (including coordinated discovery and briefing as to common issues, if any) in having Enigma's lawsuits against Bleeping and Malwarebytes proceed in the same forum. Enigma does not identify any other efficiency or interest of justice favoring this District over the Northern District of California.

### 4. Conclusion

Considering the transfer factors in combination, these weigh in favor of transfer of this case to the Northern District of California. The factors of convenience to the witnesses, convenience to the parties, and the locus of operative events, all favor transfer, and outweigh the

17

only countervailing factor, Enigma's choice of forum. The Court therefore grants Malwarebytes' motion pursuant to 28 U.S.C. § 1404.

In light of this ruling, the Court has no occasion to rule on Malwarebytes' motions for dismissal under Rules 12(b)(2) and 12(b)(6). The transferee court will be at liberty to resolve such motions or to solicit re-briefing on them.

**D.     Additional Pending Motions**

There are three other pending motions. First, Malwarebytes has filed a motion for judicial notice in support of its motion to dismiss and motion to transfer. Dkt. 40. That motion asks the Court to take judicial notice of a series of exhibits, including (1) complaints Enigma has filed in other lawsuits; (2) press releases and cease and desist letters addressed to third-parties, obtained from Enigma's website; and (3) screen images from SpyHunter, which are attached to the Scott Declaration. Enigma opposes the motion in part. Dkt. 45. Second, Enigma has moved to strike the Scott Declaration and its exhibits, as well as portions of the Harris Declaration. Dkt. 47. And third, Enigma has moved for leave to file supplemental allegations to the FAC. Dkt. 51.

The Court declines to rule on all three motions. The motion to take judicial notice, and the motions to strike, are relevant to the motions to dismiss. As such, they are properly resolved by the transferee court. All three motions do not implicate the transfer motion which the Court has resolved.[2]

---

[2] The Court properly considered the Harris Declaration in resolving the transfer motion. *See MasterCard Int'l, Inc.*, 2004 WL 1368299, at *6. Although Enigma moves to strike aspects of that declaration that Enigma claims are relevant to the motions to dismiss, Malwarebytes identified no portion of it, or of the Scott Declaration, relevant to the transfer analysis.

18

## CONCLUSION

For the foregoing reasons, Malwarebytes' motion to transfer venue pursuant to 28 U.S.C. § 1404 is granted. The Court declines to rule on Malwarebytes' motion to dismiss for lack of personal jurisdiction and for failure to state a claim, Malwarebytes' motion for judicial notice, Enigma's motion to strike, and Enigma's motion for leave to file supplemental allegations.

The Clerk of Court is respectfully directed to transfer this case to the Northern District of California.

SO ORDERED.

*Paul A. Engelmayer*
Paul A. Engelmayer
United States District Judge

Dated: May 12, 2017
       New York, New York